BRASH, J.
¶1 Lorenzo D. Kyles appeals his judgment of conviction, entered upon his guilty plea for first-degree reckless homicide, and an order denying his motion for postconviction relief.[1] Kyles claims that he received ineffective assistance from his trial counsel when counsel failed to convey an earlier-and allegedly more favorable-plea offer to resolve his case.
¶2 The postconviction court found that the "theoretical possibility" that the earlier plea offer could have resulted in a reduced sentence for Kyles was insufficient to demonstrate that Kyles had been prejudiced by the error, as required under an ineffective assistance of counsel analysis. We agree and affirm.
BACKGROUND
¶3 Kyles' conviction stems from a shooting that occurred in the early morning hours of May 17, 2002. Darrell Stinson, the victim, was shot multiple times, including in the head, outside of a gas station on 107th Street in Milwaukee. Stinson died shortly thereafter from his injuries.
¶4 Kyles was arrested and admitted to shooting Stinson during a drug deal. He was charged with first-degree reckless homicide, including an enhancer for using a dangerous weapon. Additionally, Kyles was charged with possession of a firearm by a felon. Both charges included a habitual criminality enhancer.
¶5 Plea negotiations commenced between the prosecutor and Kyles' trial counsel. In the first plea offer dated August 19, 2002, the State offered to dismiss the habitual criminal enhancer in exchange for a guilty plea to both the firearm possession charge as well as the first-degree reckless homicide charge with the dangerous weapon enhancer. The maximum sentence exposure for the reckless homicide charge with the weapon enhancer was sixty-five years (forty-five years of initial confinement and twenty years of extended supervision); the maximum sentence for the felon-in-possession charge was five years (two years of initial confinement and three years of extended supervision and/or a $10,000 fine). The offer letter explained that the State would recommend a substantial length of time for initial confinement, leaving the exact length imposed to the discretion of the trial court. The trial court would also determine whether the sentences imposed would run concurrently or consecutively. The letter included an expiration deadline for the offer of September 12, 2002.
¶6 A second offer letter was extended by the State on September 13, 2002. That letter referenced a counter proposal that had been extended by Kyles' trial counsel, which was rejected. The letter went on to describe a new plea offer that differed from the August 19 letter in that it offered to dismiss the habitual criminal enhancer for the reckless homicide charge, as well as the felon-in-possession charge. Thus, the only remaining count against Kyles would be the first-degree reckless homicide charge with the dangerous weapon enhancer. The offer letter also suggested that the State and the defense jointly recommend a forty-one year sentence, consisting of thirty-three years of initial confinement and eight years of extended supervision. Ultimately, Kyles entered his plea on those terms. The trial court agreed with that recommendation, and Kyles was sentenced on November 12, 2002.[2]
¶7 Kyles filed the postconviction motion relevant to this appeal in July 2017.[3] In his motion, Kyles argued that his trial counsel never conveyed to him the initial plea offer of August 19, 2002. Kyles contends that he would have taken that initial offer had he known about it, because it allowed for his trial counsel to argue for lesser time as opposed to agreeing to a jointly recommended sentence. As a result, Kyles asserts that he was prejudiced by this deficient performance on the part of his trial counsel.
¶8 An evidentiary hearing was held in December 2017. The postconviction court described this matter as a "complicated case," in part because it was "not entirely clear" which offer was better. Furthermore, the court described trial counsel's testimony as having "diminished credibility" because he did not have a "specific memory" of the circumstances surrounding Kyles' claim, although that was not unusual given the fifteen-year time span.
¶9 In its findings, the postconviction court noted evidence that trial counsel met with Kyles for almost an hour on August 27, 2002, which was after the initial plea offer was received from the State. Kyles contended that the meeting was to discuss revocation proceedings for another matter. In contrast, his trial counsel asserted that he would have discussed the offer letter with Kyles at that point, in addition to preparing for the revocation hearing. The court found it "unlikely" that the meeting would not have included a discussion of the offer letter, in particular because there had already been discussions on the record about resolving the case.
¶10 The postconviction court also referenced the trial court's discussion at the sentencing hearing regarding the factors that it considered in imposing the sentence. The postconviction court found that discussion helpful in its consideration of Kyles' ineffective assistance claim, particularly with regard to the prejudice prong of the analysis, because the trial court had stated that its sentence was "going to be in the neighborhood of what the parties jointly recommended." The postconviction court felt this indicated that it was unlikely the trial court would have imposed a significantly lower sentence regardless of the joint recommendation.
¶11 In making its decision, the postconviction court relied on Lafler v. Cooper , 566 U.S. 156 (2012), where the United States Supreme Court applied the Strickland[4] test to an ineffective assistance of counsel claim involving the rejection of a plea offer that resulted in a less favorable outcome for the defendant. Based on the Lafler test, see id. , 566 U.S. at 164, the postconviction court found that Kyles had only presented a "theoretical possibility of a lower sentence," which was not sufficient to establish prejudice under Lafler .[5] As a result, the postconviction court denied Kyles' motion. This appeal follows.
DISCUSSION
¶12 Kyles seeks reversal of the postconviction court's finding of no prejudice under the ineffective assistance of counsel analysis. "Wisconsin applies the two-part test described in Strickland for evaluating claims of ineffective assistance of counsel." State v. Roberson , 2006 WI 80, ¶28, 292 Wis. 2d 280, 717 N.W.2d 111 (internal citation omitted). That test requires that a defendant show that his trial counsel's performance was deficient and that the deficiency prejudiced the defense. Strickland , 466 U.S. 668, 687 (1984).
¶13 "To prove constitutional deficiency, the defendant must establish that counsel's conduct falls below an objective standard of reasonableness." State v. Love , 2005 WI 116, ¶30, 284 Wis. 2d 111, 700 N.W.2d 62. "To prove constitutional prejudice, the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. (citations and internal quotation marks omitted). Indeed, there must be a "substantial, not just conceivable, likelihood of a different result." State v. Starks , 2013 WI 69, ¶55, 349 Wis. 2d 274, 833 N.W.2d 146 (citation omitted). If a defendant fails to satisfy one component of the analysis, a court need not address the other. Strickland , 466 U.S at 697.
¶14 Our standard of review for ineffective assistance of counsel claims presents "a mixed question of law and fact." See State v. Johnson , 153 Wis. 2d 121, 127, 449 N.W.2d 845 (1990). The findings of fact made by the circuit court, " 'the underlying findings of what happened,' will not be overturned unless clearly erroneous." Id. However, "[t]he ultimate determination of whether counsel's performance was deficient and prejudicial to the defense are questions of law which this court reviews independently." Id. at 128.
¶15 Because Kyles' ineffective assistance claim is based on the rejection of a plea offer that allegedly resulted in a less favorable outcome, the postconviction court looked to Lafler for guidance in applying the Strickland test to these circumstances. In Lafler , the defendant claimed ineffective assistance of counsel because, on counsel's advice, he had rejected several plea offers that dismissed two of the charges against him; instead, he went to trial and was convicted of all charges. Id. , 566 U.S. at 161. Similarly, in Missouri v. Frye , 566 U.S. 134 (2012), decided the same day as Lafler , the defendant claimed ineffective assistance of counsel after his trial counsel failed to inform him of plea options offered by the prosecutor, one of which offered to reduce the felony charge against him to a misdemeanor; the defendant subsequently pled guilty to the felony charge with no plea agreement in place. Frye , 566 U.S. at 138-39.
¶16 In both of these cases-which reference each other-the United States Supreme Court focused on the application of the prejudice prong of the Strickland test to cases where the claim involves counsel's performance with respect to plea offers. See Lafler , 566 U.S. at 163-64 ; Frye , 566 U.S. at 148. The Court explained that to demonstrate prejudice under Strickland a defendant must establish that " 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " See Lafler , 566 U.S. at 163 (quoting Strickland , 466 U.S. at 694 ). However, in the context of counsel's failure to communicate a plea offer, this inquiry "requires looking not at whether the defendant would have proceeded to trial absent ineffective assistance but whether he would have accepted the offer to plead pursuant to the terms earlier proposed." Frye , 566 U.S. at 148. Thus, to establish prejudice under these circumstances, "a defendant in [this] position must show not only a reasonable probability that he would have accepted the lapsed plea but also a reasonable probability that the prosecution would have adhered to the agreement and that it would have been accepted by the trial court." Id. at 149-50.
¶17 In its review of these two prongs of the prejudice test set forth in Frye and Lafler , the postconviction court found that Kyles' testimony was sufficiently credible to meet the first prong, and further, that Kyles had demonstrated that the initial plea would not have been withdrawn by the State and would have been accepted by the trial court. See Frye , 566 U.S. at 149-50 ; see also Lafler , 566 U.S. at 164.
¶18 The Lafler court added a third prong to the test: "that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that were in fact imposed." Id. , 566 U.S. at 164. This prong is helpful in analyzing Kyles' claim because unlike the facts in Frye , where there is a clear indication that the uncommunicated plea offer would have resulted in a better outcome for the defendant, here it is not so clear-cut that the August plea offer was better than the second offer made in September, to which Kyles ultimately agreed.
¶19 In the September offer, there was a definite, agreed-upon sentence length for the reckless homicide charge. Kyles' maximum exposure for that crime was sixty-five years; thus, while Kyles argues that the lack of a definitive sentence recommendation in the August offer would have been beneficial to him because it would have allowed for his trial counsel to argue for a lower sentence, the trial court also could have imposed a longer sentence than the one presented under the joint recommendation. Additionally, in the September offer, the possession of a firearm by a felon charge was dismissed; that charge, which would not have been dismissed under the August offer, increased Kyles' prison exposure by five years.
¶20 Kyles points out several mitigating factors that he believes could have resulted in a sentence that was lower than the joint recommendation, including that he admitted the crime and showed remorse; that the victim's family had supported a more lenient sentence; that the presentence investigation report (PSI) suggested a sentence range of twenty-six to forty years, the lower end of which is less than the joint recommendation; and that the trial court imposed his sentence to run concurrently to a sentence resulting from a revocation proceeding in another case.
¶21 We reviewed in the record the factors that the trial court actually relied upon in imposing the sentence, including the gravity of the offense-using a firearm to kill the victim during a drug deal; the protection of the community; Kyles' prior convictions, including the fact that he was on probation at the time of the crime and continued to have "constant run-ins with the law"; the information in the PSI; that Kyles took responsibility for the crime and showed genuine remorse; and the comments from the victim's family, including their forgiveness of Kyles. Additionally, the trial court noted that while it did not believe that this was a "revenge killing," it did believe that the shooting was intentional. Moreover, when the joint recommendation was presented to the trial court toward the beginning of the sentencing hearing, the court stated that while it had not decided on a sentence at that point, the sentence length of the recommendation "was certainly in [the] neighborhood" of what the court was considering.
¶22 In sum, the sentencing factors considered by the trial court took into account the mitigating factors noted by Kyles. Whether those mitigating factors would have had a positive impact on Kyles' sentence had trial counsel been allowed to more zealously argue them at the sentencing hearing is merely a "theoretical possibility," which is not sufficient to establish prejudice. See Harrington v. Richter , 562 U.S. 86, 112 (2011).
¶23 Because Kyles has not established prejudice resulting from any errors on the part of his trial counsel, his ineffective assistance of counsel claim fails. Accordingly, we affirm his judgment of conviction as well as the postconviction court's denial of relief.
By the Court. -Judgment and order affirmed.
Not recommended for publication in the official reports.

Kyles' plea was taken by the Honorable Richard J. Sankovitz, referred to in this decision as the trial court. His postconviction motion was heard by the Honorable Mark A. Sanders, referred to as the postconviction court.

The length of initial confinement was reduced by one year to thirty-two years of initial confinement after a discussion among the trial court and the parties regarding whether the original recommended sentence complied with Wis. Stat. § 973.01(2)(d) (2015-16), regarding bifurcated sentence calculations. All references to the Wisconsin Statutes will be to the 2015-16 version unless otherwise noted.

In 2004, Kyles filed a pro se petition for a writ of habeas corpus claiming that he was denied effective assistance of counsel because his trial counsel had refused to file a direct appeal on his behalf. The petition was denied by the trial court on the grounds that Kyles failed to demonstrate that he had in fact informed his trial counsel of his wish to pursue postconviction relief. Kyles appealed, and this court affirmed the trial court.
In 2012, Kyles again filed a petition for a writ of habeas corpus seeking to have his direct appeal rights reinstated. This court denied his petition; however, the Wisconsin Supreme Court reversed that decision. Pursuant to the supreme court's directive issued in 2014, we remanded the matter to the trial court for an evidentiary hearing on Kyles' ineffective assistance of counsel claim relating to his direct appeal rights. After numerous procedural delays, including withdrawal and substitution of appointed counsel, the postconviction motion that is the subject of this appeal was timely filed in July 2017.

Strickland v. Washington , 466 U.S. 668 (1984).

Because of its determination regarding the prejudice prong of the Strickland test, the postconviction court did not reach the deficient performance prong of the test, and thus made no findings regarding any deficiencies on the part of Kyles' trial counsel.